1  **MARLIN & SALTZMAN LLP**
   Louis M. Marlin, Esq. (State Bar No. 54053)
2  Stanley D Saltzman, Esq. (State Bar No. 90058)
   Marcus J. Bradley, Esq. (SBN 174156)
3  3200 El Camino Real, Suite 100
   Irvine, CA 92602
4  (714) 669-4900 Fax: (714) 669-4750

5  **THE CULLEN LAW FIRM, APC**
   Paul T. Cullen, Esq. (State Bar No. 193575)
6  29229 Canwood Street, Suite 208
   Agoura Hills, California 91301-1555
7  (626) 744-9125   Fax: (626) 744-9436

8  Attorneys for Plaintiffs

9

10                UNITED STATES DISTRICT COURT

11                SOUTHERN DISTRICT OF CALIFORNIA

12

13 | PETER PASQUALE, an individual, SONIA GERBERDING, an individual, on behalf of themselves and all others similarly situated, | **NO: 08 CV 0785 MMA (NLS)** Honorable Michael M. Anello |
|---|---|
| Plaintiff, | **Memorandum of Points and Authorities in Support of Motion For Incentive Award to Class Representatives, and Award of Attorneys' Fees and Costs** |
| v. | |
| KAISER FOUNDATION HOSPITALS, INC., also d/b/a KAISER PERMANENTE INFORMATION TECHNOLOGY, a California corporation, and DOES 1 through 100, inclusive, | Date: March 1, 2010 Time: 2:30 p.m. Ctrm: 5 |
| Defendants. | |

21   Class Representatives, Plaintiffs Peter Pasquale and Sonia Gerberding (hereinafter referred
22 to as "Plaintiffs" or "Class Representatives"), respectfully submit the following points and
23 authorities in support of their motion for an incentive award to the Class Representatives, and an
24 award of attorneys' fees and costs to Class Counsel:

## TABLE OF CONTENTS

                                                                                           Page

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ATTORNEYS' FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     1.    The Percentage Fee Method Has Eclipsed the Lodestar Method of Fee Calculation. . . 4

         (a)    The Common Fund Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         (b)    Evolution of the Percentage Method . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     2.    The Attorneys' Fees Requested by Class Counsel Are Well Within the Range of Fees Awarded in Comparable Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

         (a)    The Time and Labor Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         (b)    The Novelty and Difficulty of the Questions Involved . . . . . . . . . . . . . . . . 10

         (c)    The Skill Required To Perform Legal Services Properly . . . . . . . . . . . . . . 11

         (d)    The Preclusion Of Other Work By The Attorney . . . . . . . . . . . . . . . . . . 11

         (e)    The Customary Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         (f)     Whether The Fee Is Fixed Or Contingent . . . . . . . . . . . . . . . . . . . . . . . 12

         (g)    The Amount Involved and the Result Achieved . . . . . . . . . . . . . . . . . . . 12

         (h)    The Reputation and Ability of the Attorneys . . . . . . . . . . . . . . . . . . . . . 12

     3.    The Costs Requested by Class Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.   THE REQUESTED INCENTIVE AWARDS FOR THE REPRESENTATIVE PLAINTIFFS ARE APPROPRIATE . . . . . . . . . . . . . . . . . . . 1

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Memorandum of Points and Authorities in Support of Motion for Incentive Awards and Attorneys' Fees        Case No: 08 CV 0785 MMA (NLS)

-ii-

# TABLE OF AUTHORITIES

Page

**STATE CASES**

*Children's Hospital & Medical Center v. Bonta (DHS)*
    97 Cal. App. 4th 740 (2002) .................................................. 3

*Gentry v. Superior Court,*
    42 Cal. 4th 443 (2007) ......................................................... 5

**FEDERAL CASES**

*Blum v. Stenson*
    (1984) 465 U.S. 886 ........................................................ 6, 8

*Cambden I Condominium Association, Inc., v. Dunkel*
    946 F. 2d 768 (11th Cir. 1991) ..............................................

*Central Railroad & Banking Co. of Ga. v. Pettus,*
    113 U.S. 116 (1885) ............................................................ 4

*E.G., Brotherton v. Cleveland*
    41 F.Supp.2d 907 (S.D. Ohio 2001) ................................... 13

*Enterprise Energy Corp v. Columbia Gas Trans. Corp.*
    137 F.R.D. 240 (S.D. Ohio 1991) ....................................... 14

*Florin v. Nations Bank of Georgia*
    34 F.3d 560 (9th Cir. 1994) ................................................. 5

*Glass v. UBS Financial Services, Inc.*
    No. C-06-4068 MMC (Jan.26,2007) .................................. 14

*In re Activision Securities Litigation*
    723 F.Supp. 1373 (9th Cir. 1989) ........................................ 6

*In re Continental Illinois Securities Litigation*
    962 F.2d 566 (7th Cir. 1992( ............................................... 8

*In re Connecticut General Life Ins. Co.*
    1997 WL 910387 (C.D. Cal. Feb. 13, 1997) ..................... 14

*In re Dun & Bradstreet Credit Services Customer Litig.*
    130 F.R.D. 366, 373-74 (S.D. Ohio 1990) ........................ 13

*In re Warner Communications Sec. Lit.*
    618 F.Supp. 735 (S.D.N.Y. 1985) ....................................... 7

*Kerr v. Screen Extras Guild, Inc.*
    526 F.2d 67 (9th Cir. 1975) ................................................. 6

*Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.*
    487 F.2d 161 (3rd Cir. 1973) ............................................................. 6

*Lindy II*
    540 F.2d 102 (1976) ...................................................................... 6

*Paul, Johnson, Alston & Hunt v. Gaulty*
    886 F.2d 268 (9th Cir. 1989) ............................................................ 4

*Trustees v. Greenough*
    105 U.S. 527 (1881) ...................................................................... 6

*Van Vranken v. Atlantic Richfield Co.*
    901 F.Supp. 294 (N.D. Cal. 1995) ..................................................... 14

*Vincent v. Hughes Air West, Inc.*
    557 F.2d 759 (9th Cir. 1977) ............................................................ 4

**OTHER AUTHORITIES**

A. Conte, *Attorney Fee Awards*
    2nd Ed. 1993, 104 ........................................................................ 5

*Newberg on Class Actions*
    4th Ed. (2002) Vol. 4 .................................................................. 7, 8

R. Pearl, *California Attorney Fee Awards*,
    (CEB, 1993) §7.4 .......................................................................... 4

## I. INTRODUCTION

Under the terms of the settlement submitted herewith for final approval, Defendant has agreed to pay a total of $3,700,000 to resolve the claims asserted. Kaiser Foundation Hospitals (Kaiser) is not paying <u>up to</u> that amount - it is paying every dollar of that amount, as this is a non-reversionary settlement. Accordingly, the total amount to be paid will not vary, nor potentially be reduced to the benefit of Defendant, based on the number of claims made.[1] Rather, as less than 100% of the potential claimants have elected to participate, the total sum of $3,700,000 will still be paid by Kaiser for the benefit of the members of the Class.

As set forth in the declarations supporting both this motion, and the contemporaneously filed Motion for Final Approval, as of the date of the drafting of this Motion, nearly 70% of the members of the class have already submitted approved claim forms, with the date for submitting a claim remaining open until February 13, 2010. The claims submitted to date represent about 65% of the anticipated claim fund available for distribution to the class.[2]

Wage and hour class action claim rates above 60%, as this Court is undoubtedly aware, are considered extremely high. When coupled with the fact that there have been **no objections** to the settlement, and **only three exclusion requests**, it is clear that the settlement has been received in a highly positive manner by the class members - - as was expected.

In order to achieve this type of successful resolution, and to have the settlement so well received, a great deal of work was done by class counsel and the representative plaintiffs. The case was actively litigated - but not overly litigated. After initial case analysis and investigation, plaintiffs' counsel engaged in significant discovery, including deposing the three 30(b)(6) witnesses designated by Defendant, analyzing nearly 3,000 pages of written documents produced by Defendant, and defending Mr. Pasquale's deposition. In addition, pre-certification notice of the

---

[1] While unclaimed funds may be used by Kaiser in connection with its obligation to pay employer side payroll taxes (with any unused amount being distributed proportionately to the class claimants), those remain expenses for Defendant. The money will be spent, not returned to Kaiser.

[2] Oseas declaration, ¶ 13.

Memorandum of Points and Authorities in Support of Motion for Incentive Awards and Attorneys' Fees

Case No: 08 CV 0785 MMA (NLS)

-1-

pending matter was sent to class members and, prior to mediation, approximately 12% of the class contacted plaintiffs' counsel and were interviewed to assist in developing plaintiffs' case on the issues of liability and damages. (Marlin declaration, ¶¶ 13-19.)

Based on information obtained by way of discovery and investigation, plaintiffs' counsel were prepared for mediation, and presented a compelling case, which ultimately, over several months of negotiations, with the assistance of mediator Jeffrey Krivis, resulted in the settlement that is now before this Court. (Marlin declaration, ¶¶ 22-24.)

The work performed by class counsel in achieving this result is detailed in the declarations filed in support of plaintiffs' motion for final approval, and the Task and Time Chart attached to Mr. Marlin's declaration, which sets forth the tasks performed and hours for all such tasks, indicating by which of the firms the work was performed. While counsel are aware of the twenty-five percent "benchmark" in the 9th Circuit, this case, this resolution, and the work involved in bringing about this conclusion so efficiently, more than suffice to support the award requested of thirty percent (33 1/3%).

Class counsel submits the Task and Time Chart so that the Court can be assured that counsel took all reasonable steps to avoid duplication of efforts, while working towards the common goal of achieving the best possible result for the class. For example, as evidenced by the chart, Mr. Cullen had the initial contact with the two plaintiffs in this matter, and was charged with coordinating and obtaining their assistance and information concerning the nature of the work they performed as Kaiser employees. Marlin & Saltzman primarily handled contact with class members subsequent to the dissemination of pre-certification notice, with assistance from Mr. Cullen as required.[3] Due to the large volume of documents produced by Defendant (nearly 3,000 pages), and the need to complete this task in order to prepare for the 30(b)(6) depositions, both firms worked jointly on analyzing the documents and evidence produced by Defendant. All of the attorneys

---

[3] At the time the parties moved for preliminary approval of this settlement, an estimated 12% of the class had made contact with plaintiffs' counsel. Since that time, the number has grown to approximately 25%. This number does not include the calls and other inquiries presented to the Claims Administrator. (Marlin declaration, ¶34). As of January 29, 2010, the Claims Administrator had received 211 calls regarding this matter. (Oseas declaration, ¶10).

participated in interviewing the class members in response to the pre-certification communication, legal research projects were divided between the firms, and the attorneys ensured adequate attendance at depositions. (Marlin declaration, ¶ 41.)

In summary, all reasonable steps were taken by experienced counsel to ensure the prompt and efficient pursuit of the best possible result. On point in this regard is the case of *Children's Hospital & Medical Center v. Bonta (DHS)* 97 Cal. App. 4th 740, 783 (2002), where the court considered, in ruling on a contested attorney fee motion, that plaintiffs attorneys "appear[ed] to have efficiently divided the work" and had complementary skills and experience. That was and has been the goal of Class Counsel herein from the very beginning. It is hoped that the Task and Time Chart will assist in the Court's analysis not only of the reasonableness of the tasks and hours worked, but also of the equally important division of labor among class counsel.

The Task and Time chart establishes that Marlin & Saltzman's lodestar is 834.4 hours, Mr. Cullen's lodestar is 342.8 hours, and plaintiffs' original counsel expended 49.7 hours.[4] The attorneys handling this matter for plaintiffs are experienced – Mr. Marlin and Mr. Saltzman have been practicing law for 37 and 30 years, respectively, and Mr. Cullen has been practicing for 12 years. This history easily justifies an average blended rate of $550 per hour for Marlin & Saltzman and a $450 per hour rate for Mr. Cullen . (Marlin declaration, ¶¶ 35, 36; Cullen declaration, ¶ 11.) With the application of a conservative multiplier of only 2, this would yields a total of $1,245,94, **less than** the $1,233,333 sought herein, thus offering a clear cross validation of the contingent fee sought. As such, whether considered via the common fund method, clearly preferred in the 9th Circuit, or the lodestar plus a multiplier method, the fee is both reasonable and appropriate.

The notice of settlement provided to the Class Members advised that Class Counsel would be seeking an award of attorneys' fees of up to one-third of the settlement, and reimbursement of their litigation expenses. (Ex. A to Oseas declaration, pg. A-7.) No objections have been received from the class members. Likewise, both Defendant and the Class Representatives are in agreement. Thus, the amount claimed in attorneys' fees is well supported, and without controversy.

---

[4] The hours for each firm are attested to in accompanying the declarations of counsel.

## II. ATTORNEYS' FEES

**1. The Percentage Fee Method Has Eclipsed the Lodestar Method of Fee Calculation.**

    **(a)    The Common Fund Doctrine**

The Common Fund Doctrine is predicated on the principle of preventing unjust enrichment. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund. Both State and Federal courts in California have embraced this doctrine. (*Vincent v. Hughes Air West, Inc.* 557 F. 2d 759, 769 (9th Cir.1977).)

The Common Fund Doctrine is the oldest exception to the American rule of fee shifting.

> The Common Fund exception is grounded in the historic power of equity to permit the trustee of a fund or property (or a party preserving or recovering a fund for the benefit of others, as well as himself or herself) to recover costs, including attorneys fees. Those costs and fees are paid out of the fund or property itself, or directly from the other parties enjoying the benefit. R. Pearle, *California Attorney Fee Awards* (CEB, 1993) §7.4, p. 7-5.

It is clear that the cash payments herein constitute a substantial common fund. Although exact payments are not available as of the date of this filing, the average payment will be nearly $14,000. (Marlin Decl. at ¶ 50.) This is indeed a sizeable recovery, particularly in light of the fact that defendant had potentially strong viable arguments concerning (1) the claim of mis-classification, and (2) the claim concerning the extent of uncompensated overtime hours. Despite these obstacles, a substantial average net recovery will be realized by class members. All that is required of a qualified class member is the submission of a timely and simple claim form. Under the foregoing doctrine, courts have historically and consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose injuries and/or damages are too small to economically justify individual representation. In *Paul, Johnson, Alston & Hunt v. Gaulty* 886 F.2d 268, 271 (9th Cir. 1989), the Ninth Circuit embraced this principle when it stated:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon

whom he has conferred a benefit. The amount of such a reward is that which is deemed 'reasonable' under the circumstance.

Accordingly, in the determination of a reasonable common fund fee award, courts award fees to serve as economic incentive for lawyers to bring class actions in order to achieve increased access to the judicial system for meritorious claims and to enhance deterrents to wrongdoing. (See A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993, 104, p.6.) In this case, it would have been difficult, if not impossible, for all these class members to bring individual suits against their current or former employer for the sums involved.[5] Collectively, the result has been that each class member who has submitted a claim will receive the average payment noted above. When the Ninth Circuit held that the Common Fund Doctrine was available in ERISA cases, the court echoed the foregoing sentiment:

> Having determined that risk multipliers remain available in common fund cases after *Dague*, we further note that we have held, in pre-*Dague* case, that a risk multiplier is not merely available in common fund cases but mandated, if the court finds that counsel had no sure source of compensation for their services...Moreover, we have observed that the need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent. (*Florin v. Nations Bank of Georgia* 34 F.3d 560, 564 (9th Cir. 1994).)

When counsel agreed to take over this case, not only was it inescapably contingent, but the prospect of a long drawn-out battle with a defendant which had retained a premier litigation firm was almost a certainty. Current counsel agreed to substitute into this matter at a relatively early stage of the case. The Defendant asserted all available defenses in its answer, and remained prepared to litigate the existence of any available exemption from the requirement to pay overtime compensation to this unique group of employees. In addition, Kaiser claimed that it had an internal time keeping system that accurately recorded hours of work performed by the class and that any overtime was quite small.

In the face of these issues, class counsel pursued this matter on behalf of the representative

---

[5] The large majority of class members remain current employees, thus making it challenging for them to individually institute an action against their employer. (See, *Gentry vs. Superior Court* 42 Cal.4th 443, 459-460 (2007).)

plaintiffs, and the proposed class, and achieved a significant result for the entire class. It is respectfully submitted that the result more than justifies the fee requested.

      **(b)      Evolution of the Percentage Method.**

Ever since the Common Fund Doctrine found its genesis in *Trustees v. Greenough* 105 U.S. 527 (1881), courts have awarded fees on a percentage basis. In arriving at reasonable percentage fee awards, courts consider a variety of factors, but focus on the particular circumstances of the case in fixing a percentage above or below a benchmark. During the 1960s and early 1970s, following the 1966 amendments to Rule 23, the size of settlement funds began increasing significantly and the fees awarded pursuant to the percentage method, taken out of context, were criticized by commentators and the general press. The 1973 revision for the Manual for Complex Litigation proposed that all common fund fee awards be based on time reasonably expended on the action. This concept was then embraced in *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.* 487 F.2d 161 (3rd Cir. 1973), and *Lindy II* 540 F.2d 102 (3rd Cir. 1076). Thereafter, a large number of courts adopted *Lindy's* rationale, and courts generally began awarding fees based on the actual time expended (the lodestar), in conjunction with a multiplier of between 2 and 4. (*Kerr v. Screen Extras Guild, Inc.* 526 F.2d 67 (9th Cir. 1975).)

As time passed and courts were forced to wade through the voluminous, and often complicated and privileged time records, it became evident that utilization of the lodestar method had reached a point of diminishing returns. As the court noted in *In re Activision Securities Litigation* 723 F.Supp. 1373, 1375 (9th Cir. 1989):

> The question this court is compelled to ask is, Is this process necessary? Under a cost-benefit analysis, the answer would be a resounding, No! Not only do the *Lindy, Kerr* and *Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorney's fee petition.

In *Blum v. Stenson* 465 U.S. 886 (1984) the U.S. Supreme Court approved a percentage of fund as being an appropriate fee award, and since then courts have increasingly rejected the lodestar approach. This trend recognizes the fact that compensating class counsel on a percentage of the common fund makes good sense because 1) it is consistent with the private marketplace where

contingent fee attorneys are customarily compensated on such a basis; 2) it aligns the interests of class counsel and absent class members in achieving the maximum possible resolution of the case; and 3) it augers for the most efficient and expeditious resolution of the litigation by providing an incentive for early, yet reasonable, settlement. Counsel respectfully submit that the award requested in this case meets all those criteria, such that it should be made on a percentage basis. As stated in *Newberg on Class Actions*:

> Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the POR [percentage of recovery] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar figure the lawyer earns. Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner. (*Id*, 4th Edition (2002), vol. 4, p. 556.)

In this case, while substantial work and hours were devoted to obtaining the result achieved, it was done in an efficient manner which was designed to avoid duplication of hours, and unnecessary expenditure of time for the sole purpose of yielding a larger lodestar. (*See*, Marlin Declaration, and Exhibit 2 thereto, the Task and Time Chart.) The hours worked were dedicated solely to creating the best possible recovery for the class members.

### 2. The Attorneys' Fees Requested by Class Counsel Are Well Within the Range of Fees Awarded in Comparable Cases.

The goal in a case such as this is to set a fee that approximates the probable terms of a contingent fee contract negotiated by a sophisticated attorney and client in comparable litigation. A review of class action settlements over the past 10 years shows that the courts have historically awarded fees in the range of 20% to 50%, depending upon the circumstances of the case. Class Counsel's requested fee comes to one-third -- a percentage well within the range of reasonableness. In discussing the range of fees, Presiding Judge Patel stated in the *Activision* litigation:

> In *In re Warner Communications Sec. Lit.* (S.D.N.Y. 1985) 618 F.Supp. 735, 749-50, Judge Keenan concluded that the **fees range from 20% to 50%.** The average of the fees in the sixteen cases listed in *Warner* is 30.6%. (*In re Activision Securities Litigation* (N.D. Cal. 1989) 723 F.Supp. 1373, 1378.)

Newberg is in accord:

> No general rule can be articulated on what is a reasonable percentage of a common fund. **Usually 50% of the fund is the upper limit** on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented. (Newberg, Newberg on Class Actions, 4th Ed., 2002, vol. 4, p. 550.)

The *Warner* case, Newberg on Class Actions, and other authorities in various Federal judicial circuits all support the conclusion that fees between 20% and 40% of a common fund have normally been awarded over the past several years. In this regard, an article in Class Action Reports pointed out the following percentages in multi-million dollar cases: *Construction Inc. v. National Council on Compensation Ins. Nos. 89-822 and 89-1186* (W.D. Okla. June 7, 1993) (anti-trust; **34%**); *In re Meldridge, Inc. Securities Litigation* (D. Or. March 19, 1992, and November 1993) 87-426 (**34%**); *Hwang v. Smith-Corona Corp.* (D. Conn. March 12, 1992) No. 89-450 (**35.8%**).

The percentage method is consistent with and is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigations* 962 F.2d 566, 572 (7th Cir. 1992), "[t]he object in awarding a reasonable attorney's fee... is to simulate the market... The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." In non-class litigations, one-third contingency fees are typical -- thirty percent is requested herein. In their concurring opinion in *Blum*, Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."

The complex nature of this litigation and its successful result leads to the clear conclusion that the fee request herein is reasonable. In *Cambden I Condominium Association, Inc., v. Dunkel* 946 F. 2d 768 (11th Cir. 1991), the court identified the following as factors to be considered in arriving at a common fund fee determination: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the

customary fee; 6) whether the fee is fixed or contingent; 7) time limitation imposed by the client or the circumstances; 8) the amount involved and results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. As previously discussed herein, each and every one of these factors favors the award sought by Class Counsel herein. Class Counsel will address those factors which it believes most relevant to the Court's fee determination in this case.

### (a)   The Time and Labor Required.

Substantial hours were spent researching and investigating applicable law, preparing for and analyzing written and deposition discovery, and contacting and responding to class members, in order to prepare and evaluate the case. Marlin & Saltzman, at various times, committed several attorneys at a time to take on the various tasks necessary to posture the case for a successful settlement. Mr. Cullen, a sole practitioner, put aside numerous other matters to participate in the litigation of this case. (Cullen declaration, ¶25.)

Although the tasks and hours are set forth in great detail in the chart attached as Exhibit 2 to the Marlin declaration, some of the areas worth highlighting include the following:

- Extensive legal research regarding the basis for any claim of exemption that could be raised by defendant.

- Crafting and dissemination of pre-certification notice to class members.

- Responding to inquiries from interested class members on such issues as their own personal experiences and possible losses, entitlement to participate in the class, the status of the litigation, offers of assistance with discovery issues, etc.

- Reviewing, analyzing and evaluating the thousands of documents provided through formal and informal discovery.

- Preparation for and the taking of the depositions of the three 30(b)(6) deponents designated by defendant.

- Preparing a comprehensive mediation brief and attending the mediation.

- Continued negotiations (via Mr. Krivis) after mediation, ultimately resulting in an agreement on the principle terms of a settlement.

- Working with Defendant's counsel to agree upon the formal settlement terms, the form of class notice, the claim form, etc.

This case was litigated on a contingent basis with all of the concomitant risk factors inherent

in such an uncertain undertaking. Had Class Counsel not been successful every step of the way, the many hours they devoted to this case would have been for naught, and would not have produced any fee or any reimbursement for expenses. In comparing contingent fee practice to hourly rate practice, in light of the value of time and the carrying of costs involved in contingent litigation, this practice is expected to produce well beyond the hourly rate.

        **(b)**        **The Novelty and Difficulty of the Questions Involved.**

The theories upon which this case were based were novel. The class members in this case are "application coordinators," whose principle job function is to coordinate the use of Kaiser's computerized data management system so that modifications, updates, etc. are integrated properly throughout the business enterprise. Kaiser, throughout the litigation, viewed these employees as highly sophisticated and highly trained employees who would properly be classified as non-exempt under one or more of the applicable Wage Orders.

In order to support the various claims, plaintiffs were required to delve into the relatively murky waters of the nature of the work done by application coordinators in the various departments and sub-departments in the Kaiser corporate structure. Counsel was required to obtain a working knowledge of the nature and extent of the work performed by class members so as to be able to argue the non-exempt status of these well trained employees under applicable California law.

        **(c)**        **The Skill Required To Perform Legal Services Properly.**

The skill required to properly litigate this case is evident not only in the results achieved, but in the steps necessary to reach the same. The detailed Task and Time Chart referred to above sets forth in detail the numerous tasks that were handled by class counsel. Defendant retained a premier litigation firm to represent its interests, and it did so efficiently, professionally and zealously. There were numerous disagreements over sometimes even the minute details of the matter, yet all were handled in a manner reflecting the professionalism of all counsel. The ability to engage a large corporate entity with premier defense counsel, reflects directly on the skill and experience of the class counsel.

Memorandum of Points and Authorities in Support of Motion for
Incentive Awards and Attorneys' Fees
-10-
Case No: 08 CV 0785 MMA (NLS)

  **(d)**  **The Preclusion Of Other Work By The Attorney.**

The accompanying declarations of Louis Marlin at ¶ 44 and Paul Cullen at ¶ 25, evidences that in order to devote the required resources to this litigation, several alternative class actions were rejected by counsel. Class Counsel willingly devoted the time and effort needed to successfully litigate this matter, to the preclusion of other cases.

  **(e)**  **The Customary Fee.**

As noted elsewhere in this Memorandum, the customary contingent fee for this type of class action common fund litigation ranges from 20 to 40%, sometimes being as high as 50%. In the 9th Circuit, 25% is considered the benchmark. In this case, with the work detailed and the excellent result achieved, it is submitted that the award of 33 1/3% is justified. This is especially so when the non-reversionary element is factored in. Every dollar agreed to will be paid, and the class members participating will receive over $21,000, on average, before fees and costs. Given this result, it is respectfully submitted that a fee more closely aligned with the marketplace of 33 1/3% plus should be awarded.

  **(f)**  **Whether The Fee Is Fixed Or Contingent.**

The representative plaintiffs have executed a contingent fee agreement.

  **(g)**  **The Amount Involved and the Result Achieved.**

There is little question that the result achieved, in light of the difficulties inherent in suing one's own employer, is extraordinary. From the outset, the difference between the parties was substantial. This has already been discussed in great detail.

  **(h)**  **The Reputation and Ability of the Attorneys.**

The plaintiffs' attorneys are all well-respected and well-known in the litigation community, and more particularly in the wage and hour class action field. The extensive experience of Marlin & Saltzman, and of Mr. Cullen, was set forth in detail in the declarations filed by plaintiffs' counsel in connection with the motion for preliminary approval of this settlement, and in order to avoid repetition, those declaration are incorporated herein by this reference.

The most senior partners of Marlin & Saltzman personally handled the matter, including Louis Marlin and Stanley Saltzman. Recently, Law360.com, a premier online website which, in

part, evaluates law firms and attorneys on the abilities and reputation, named Marlin & Saltzman one of the top six plaintiffs' employment class action law firms in the United States. Both Mr. Marlin and Mr. Saltzman have been selected as "Super Lawyers" by *Los Angeles Magazine* and by *Orange Coast Magazine*. (Marlin declaration, ¶ 36).

### 3. The Costs Requested by Class Counsel.

The actual expenses incurred, as set forth in the declarations of counsel, total $14,429.26. (See Marlin declaration, ¶ 52.) These expenses were all incurred in connection with the pursuit of this matter, and range from filing fees to deposition and travel costs, to mediation fees. It is requested that they be ordered reimbursed at this time, as disclosed in the Notice mailed to all the class members.

## III. THE REQUESTED INCENTIVE AWARDS FOR THE REPRESENTATIVE PLAINTIFFS ARE APPROPRIATE

Numerous courts have found it appropriate to recognize the role of the representative plaintiffs, without whose actions and courage the benefits of the settlement which are conferred on the class as a whole would never have been achieved. The criteria courts may consider in relation to incentive awards include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative a result of the litigation. (*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) [approving award of $50,000 to named plaintiff].)

Each of these factors favors the incentive awards requested in the present case. As set forth more fully in the attached Marlin and Cullen declarations, both plaintiffs provided valuable assistance to Class Counsel in the prosecution of this matter. They assisted in connection with understanding the functions of the application coordinators, their role within the defendant's enterprise, and knowledge of others who had experienced similar concerns, and hours worked. The information provided by the class representatives assisted Class Counsel in preparing for discovery, both written and depositions, and establishing reasonable bases for calculating both the actual and

estimated damage matrixes ultimately used by counsel. This information proved invaluable in the ultimate negotiations with defendant, and in reaching a settlement that properly and adequately compensates class members for the claims asserted in this matter.

Courts frequently award incentive payments to named class representatives. Thus, one court stated:

> The Court finds that incentive awards are appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class. Modest compensation may sometimes be merited for extra time spent by the class representatives in meeting with class members, gathering discovery materials on behalf of the class, and similar efforts. (Manual for Complex Litigation § 30.41 n.86 (2d ed. 1985).)

Here, both plaintiffs participated in and contributed to this litigation in a substantial manner. The plaintiffs performed the following tasks of significant importance to prosecuting this class action:

- Assisted with initial investigation regarding their claims;
- Actively participated in discussions with counsel regarding case development, witnesses to call on, document reviews, etc.;
- Assisted in settlement strategy and preparing counsel for the mediation;
- Actively followed the status of settlement negotiations;
- Independently evaluated the terms of the settlement to reach a decision concerning settlement;
- Sought to represent a class of his fellow colleagues.

This significant work is in line with those of other class representatives who have been granted awards similar to those being requested here. (*See, e.g., Glass v. UBS Financial Services, Inc.*, No. C-06-4068 MMC (Jan.26,2007) [approving $25,000 awards].)

Authorities from other courts over the past two decades also show that the amounts of the awards sought here are in line with those previously approved. (*E.G., Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) [$50,000 to class representative who was "instrumental in bringing this lawsuit forward"]; *Enterprise Energy Corp v. Columbia Gas Trans. Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) [$50,000 incentive awards to each of six named representatives]; *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990)

1  [two incentive awards of $55,000 and three incentive awards of $35,000]; *In re Connecticut General Life Ins. Co.*, 1997 WL 910387 (C.D. Cal. Feb. 13, 1997) [$25,000 each for class members]; *In re Revco Sec. Litig.*, 1992 WL 118800 at (N.S. Ohio, May 6, 1992) [$200,000 incentive award].)

Moreover, the incentive payments sought are lower that those given by other courts. (*See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) [awarding $50,000 to the class representative]; *Enterprise Energy Corp. V. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) [awarding $50,000 to each class representative].)

Based on the foregoing, it is respectfully requested that the Court recognize the efforts, courage and resolve of the representative plaintiffs, and the result that their efforts have brought to bear on behalf of their fellow class members, and award each of them an incentive payment of $20,000. Just as with the attorney fee requested, the amount requested for the incentive payment was clearly set forth in the Notice to Class Members, and there have been no objections filed to the amount sought.

### IV. CONCLUSION

For the reasons stated above, Plaintiffs request that the Court enter an Order:

(1) Approving Class Counsel's request for payment of attorneys' fees in the amount of $1,233,333;

(2) Approving Class Counsel's collective costs of litigation in the amount of $14,429.26;

(3) Approving a $20,000 incentive award to each of the Class Representatives;

(4) Approving the Claims Administrator's fees in an amount not to exceed $40,000; and

(5) For such additional relief as this Court may deem proper.

Dated: February 8, 2009

Respectfully submitted,
MARLIN & SALTZMAN LLP
THE CULLEN LAW FIRM, APC

By: _____
Louis M. Marlin
Attorneys for Plaintiffs and Plaintiff Class